IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RENEE LEMPKE, individually          )
and as the Executrix of the         )
Estate of ROBERT LEMPKE,            )
deceased                            )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 11-1236
                                    )
OSMOSE UTILITIES SERVICES, INC.     )
and A.B. CHANCE COMPANY,            )
                                    )
            Defendants.             )


MEMORANDUM

Gary L. Lancaster,                              January $\lfloor\lfloor$, 2012
Chief Judge.

        This is an action in products liability. Plaintiff,

Renee Lempke, alleges that defendants' negligent acts and

defective products caused the injury and death by electrocution

of Robert Lempke, her husband. Specifically, Ms. Lempke alleges

that defendant, Osmose Utilities Services, Inc. ("Osmose"),

failed to properly inspect and treat the utility pole at which

Mr. Lempke was electrocuted.    Ms. Lempke also alleges that

defendant A.B. Chance Company ("Hubbell")[1] was negligent in its

design and manufacture of a fuse that failed to properly perform

---

[1] Plaintiff's complaint named "A.B. Chance Company" as a
defendant.  A.B. Chance is in fact a division of Hubbell Power
Systems, Inc. ("Hubbell").    Hubbell was also named as a
defendant in civil action No. 11-1237.

and protect Mr. Lempke, and that the fuse's defective condition caused Mr. Lempke's injuries.

Defendant Hubbell has filed an Amended Motion to Dismiss [Doc. No. 9] one of Ms. Lempke's three negligence theories, specifically that Hubbell "increased the risk of harm" to Mr. Lempke.[2]  Hubbell argues that Pennsylvania law requires a defendant's negligent conduct to be either the proximate cause of, or a substantial factor in causing, plaintiff's injury.  Ms. Lempke argues that she properly pled causation based on an increased risk of harm theory, which is recognized under Pennsylvania law as a basis for liability in tort.

For the following reasons, Hubbell's motion will be denied.

I.  BACKGROUND

Accepting plaintiff's allegations as true, the following is the factual predicate of the claims against defendant Hubbell.

On September 16, 2008, Mr. Lempke, a utility worker, was working as part of a relief effort to restore power in Mercer County, Pennsylvania, when he came into contact with a downed, energized power line.  As a result of the contact, Mr.

---

[2] As noted in Hubbell's Supplement to the Amended Motion to Dismiss [Doc. No. 84], the other arguments presented in the original Amended Motion to Dismiss are now moot.

Lempke suffered catastrophic injuries and death. A T-type fuse, which was designed, manufactured and sold by defendant Hubbell, was incorporated into the power line to prevent current flow beyond the rating of the line. The fuse failed to de-energize the line, thus exposing Mr. Lempke to at least 7,200 volts of electricity. [Doc. No. 1-1 ¶¶ 22-41].

Plaintiff Renee Lempke, Robert Lempke's widow, subsequently filed four actions in the Court of Common Pleas of Philadelphia County, Pennsylvania, acting individually and as the executrix of Mr. Lempke's estate. Two of the actions, including this one, were removed to federal court based on diversity of citizenship. [Doc. No. 1]. Two of the actions remain in state court. Subsequently, the U.S. District Court for the Eastern District of Pennsylvania granted defendants' motion to transfer venue to the Western District of Pennsylvania. [Doc. No. 69]. The cases are docketed in this court as civil action nos. 11-1236 and 11-1237.

Civil action no. 11-1237 involves the same operative facts as this action, but was filed against defendants General Electric Company ("GE"), Schweitzer Engineering Laboratories, Inc. and Hubbell. [No. 11-1237 Doc. No. 1]. Making essentially the same argument as defendant Hubbell makes here, both Hubbell and GE have filed motions to dismiss and strike [11-1237, Doc. Nos. 6 and 7].

In her complaint in this case, Ms. Lempke identified three theories of causation for her negligence claim. She alleged that Hubbell's conduct: (1) "increased the risk of harm to Robert Lempke;" (2) was a "substantial contributing factor[] in causing Robert Lempke to suffer" his injuries; and (3) was a "direct and proximate" cause of Robert Lempke's injuries. [Doc. No. 1-1 ¶¶ 47, 60]. Hubbell argues that Ms. Lempke has not pled facts sufficient to maintain a legal claim based on the "increased risk of harm" theory. [Doc. No. 35]. Therefore, Hubbell's motion is a partial motion to dismiss, challenging the legal sufficiency of only one theory of negligence liability pled by Ms. Lempke.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "'a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff

5

alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8.

III. DISCUSSION

A federal court sitting in a diversity case must apply the substantive law that the local state court would apply. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Pennsylvania law, a negligence claim has four components: duty, breach of duty, actual and proximate causation, and damage. Orner v. Mallick, 527 A.2d 521, 523 (Pa. 1987). Here, the causation element of plaintiff's negligence claim is at issue. To succeed in her negligence claim, Ms. Lempke must prove a causal connection between defendant's breach and Ms. Lempke's injury. Id.

Pennsylvania law does, in limited circumstances, permit recovery where a defendant's negligence increased the risk of harm to a plaintiff, even if plaintiff cannot show conclusively that no injury would have occurred in the absence of negligence. If the plaintiff can show an increased risk of harm, then the case may be submitted to a jury to determine whether the increased risk of harm was a substantial factor causing the injury. See, e.g., Mitzelfelt v. Kamrin, 584 A.2d 888, 892 n.1 (Pa. 1990). In essence, this rule "relax[es] the degree of certitude normally required of plaintiff's evidence in

order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries[.]" Hamil v. Bashline, 392 A.2d 1280, 1286 (Pa. 1978). Plaintiff here claims recovery on an "increased risk of harm" theory under Sections 321 and 323 of the Restatement (Second) of Torts ("Restatement"). The court will address each of these theories in turn.

As an initial matter, Section 321 is wholly inapplicable to the facts pled by Ms. Lempke and the "increased risk of harm" causation theory.[3] Section 321 creates a duty to perform an act, in contrast with the more typical duty to act in a non-negligent manner once an act is undertaken. See Cipriani v. Sun Pipe Line Co., 574 A.2d 706, 715 (Pa. Super. Ct. 1990) (finding that defendant pipeline company breached a duty under Section 321 when it failed to register underground pipelines with PA One-Call, an underground utility registration service). Ms. Lempke alleges generally that Hubbell's design and manufacture of the fuse was negligent; she does not allege that Hubbell had a duty to supply a fuse (or take some other action),

---

[3] Restatement (Second) of Torts § 321(1) reads: "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect." This section has never been adopted by the Pennsylvania Supreme Court as the law of Pennsylvania. DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 280 n.5 (3d Cir. 2007).

but failed to do so. In addition, Ms. Lempke has not pled that Hubbell realized or should have realized, after the manufacture and distribution of the fuse, that it posed an unreasonable risk of harm to Mr. Lempke, and failed to take action to protect him. Therefore, we predict that the Supreme Court of Pennsylvania would not apply Section 321 as a basis for recovery in this suit, and we decline to do so.

Section 323, adopted as part of Pennsylvania negligence law, recognizes a class of tort actions that differ from typical negligence actions. A plaintiff typically alleges that a "defendant's act or omission set in motion a force which resulted in harm"; under Section 323, the theory is that a "defendant's act or omission failed in a duty to protect against harm from another source." Hamil v. Bashline, 392 A.2d at 1286. Section 323, known as the good samaritan doctrine, provides, in relevant part:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if . . . his failure to exercise such care increases the risk of such harm[.]

Section 323 is arguably applicable to the facts pled by Ms. Lempke, because she alleges that Hubbell's fuse failed to protect Mr. Lempke from the harm of electrocution by a power line. Many of the elements of Section 323 are alleged in the

8

complaint. Ms. Lempke has alleged that the intended purpose of the fuse was to prevent excessive current flow, which could harm a utility worker.    [Doc. No. 1-1 ¶ 40].    If Hubbell had such intent, it demonstrates knowledge that the fuse was necessary for protection of another person.    Ms. Lempke has alleged that Hubbell failed to exercise reasonable care in the design, manufacture, and distribution of the fuse, and that such failure increased the risk of bodily harm to Mr. Lempke from a downed power line.    [Doc. No. 1-1 ¶¶ 56-60].    The sole remaining issue is whether the complaint supports a plausible inference that Hubbell undertook "to render services" to Mr. Lempke (and all utility workers) when it designed and manufactured the fuse at issue. See Restatement (Second) of Torts § 323.

        Courts in Pennsylvania have invoked Section 323 in a variety of factual settings, but never in the context of a negligence-based products liability case.    Section 323 is often applied in medical malpractice suits.    See, e.g., Shannon v. McNulty, 718 A.2d 828, 836 (Pa. Super. Ct. 1998).    Pennsylvania courts have also applied Section 323 to hold liable a homeowner who, after a guest fell and lost consciousness, failed to obtain medical help or notify the guest's wife of the injury, Filter v. McCabe, 733 A.2d 1274, 1278 (Pa. Super. Ct. 1999), and to hold liable a personal care home that failed to take action for ten days after a resident left the facility without medication and

without signing out, Feeney v. Disston Manor Personal Care Home, Inc., 849 A.2d 590, 595-96 (Pa. Super. Ct. 2004).

Designing and producing a fuse is distinct from traditional notions of "service," such as providing medical service, hosting a guest, or providing full-time personal care. Ms. Lempke seems to allege that providing a functional fuse to the company that maintains the power distribution system is equivalent to providing a service to utility workers.  Ms. Lempke's theory stretches Section 323 beyond its plain meaning and beyond the cases decided by the Supreme Court of Pennsylvania.  However, facts may be developed during discovery to support Ms. Lempke's contention that Hubbell was acting in the manner of a service provider, rather than simply a product supplier.  Because further factual development may occur during discovery or at trial, the court will decline to eliminate Ms. Lempke's "increased risk of harm" theory at this early stage of the proceedings.  When all reasonable inferences are drawn in favor Ms. Lempke, she has alleged facts which could, if established at trial, entitle her to relief.


IV. CONCLUSION

Therefore, the court will deny defendant's partial motion to dismiss. An appropriate order follows.


10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENEE LEMPKE, individually      )
and as the Executrix of the     )
Estate of ROBERT LEMPKE,        )
deceased                        )
                                )
            Plaintiff,          )
                                )
        v.                      )  Civil Action No. 11-1236
                                )
OSMOSE UTILITIES SERVICES, INC. )
and A.B. CHANCE COMPANY,        )
                                )
            Defendants.         )

ORDER

AND NOW, this $\underline{11^{th}}$ day of January 2012, upon
consideration of defendant A.B. Chance Company's Amended Motion
to Dismiss [Doc. No. 9] and any responses thereto, IT IS HEREBY
ORDERED that defendant's motion is DENIED.

BY THE COURT:

_____, C.J.
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record